Winton M. Blount v. Commissioner.
Blount v. Commissioner
Docket No. 109601.
United States Tax Court
1943 Tax Ct. Memo LEXIS 339; 1 T.C.M. (CCH) 986; T.C.M. (RIA) 43195; April 28, 1943
*339 Held, following Helvering v. Sprouse and Strassburger v. Commissioner, 318 U.S. 604, no income resulted to petitioner where a distribution of a stock dividend caused no change in the value of proportionate interest owned before and after the distribution. Joseph L. Cain, Esq., 38 Memorial Drive, Cambridge, Mass., for the petitioner. T. G. Histon, Esq., for the respondent. VAN FOSSAN Memorandum Opinion VAN FOSSAN, Judge: The respondent determined a deficiency in income tax for the year 1939 in the amount of $1,407.74. [The Facts] The facts were stipulated substantially as follows: Petitioner is an individual residing in Union Springs, Alabama. He filed his 1939 Federal income tax return with the Collector of Internal Revenue for the district of Alabama on or about March 15, 1940. The Tuskegee Asphalt Corporation is a corporation organized under the laws of Delaware on April 7, 1938. Immediately prior to December 28, 1938, its authorized capital stock consisted of 400 shares of Class A stock without par value and 100 shares of Class B stock without par value, all of which authorized stock was issued and outstanding. The rights and privileges of *340 the Class A and Class B stock of the Tuskegee Asphalt Corporation are stated in the certificate of incorporation as follows: All shares of Class "A" stock issued by the Corporation shall be voting stock of equal rights. All shares of Class "B" stock shall have no voting rights. Class "A" and Class "B" stock shall be entitled out of the net profits or earned surplus of the corporation to the same dividends per share, when, as and if declared by the Directors. In the case of liquidation or dissolution, whether voluntary or involuntary, the Class "A" stock shall be entitled to receive all capital and paid in surplus. Suplus accumulated from earnings and not paid out as dividends shall be divided on an equal per share basis between the Class "A" and Class "B" stock outstanding when such earnings were made. On December 28, 1938, the certificate of incorporation of Tuskegee Asphalt Corporation was amended which amendment reads as follows: The amount of the total authorized capital stock of this Corporation is Fourteen Hundred (1400) shares, consisting of Four Hundred (400) shares of Class "A" stock without nominal or par value, and One Thousand (1,000) shares of Class "B"stock without *341 nominal or par value, which shares may be issued from time to time without action by the stockholders, for such consideration as may be fixed from time to time by the Board of Directors, and shares so issued, the full consideration for which has been paid or delivered, shall be deemed full paid stock, and the holder of such shares shall not be liable for any further payment thereon. At a meeting of the board of directors of the Tuskegee Asphalt Corporation held on December 30, 1938, the following motion was passed: VOTED: That a dividend of three-tenth (.3) of a share of Class "B" stock of the Company be and the same is hereby declared on each share of Class A and Class B of the Capital stock of the Company outstanding, payable on or before January 15, 1939, to stockholders of record at the close of business December 30, 1938, and that for each share of Class "B" stock so issued as a dividend the earned surplus of the Company to be charged $100.00 and said amount credited on the records of the Company as the value for which said stock is issued. Petitioner on December 30, 1938, was the owner of 200 shares of Class A stock of Tuskegee Asphalt Corporation. On or about January 14, *342 1939, he received 60 shares of Class B stock of Tuskegee Asphalt Corporation as a dividend on his Class A shares, pursuant to the resolution of the board of directors quoted above. The fair market value of the Class B stock of Tuskegee Asphalt Corporation when received by petitioner on or about January 14, 1939, was $100 per share. The earnings and profits of Tuskegee Asphalt Corporation accumulated subsequent to March 1, 1913, were sufficient for the payment of the stock dividend at $100 per share authorized by the board of directors on December 30, 1938. The petitioner did not report the aforesaid stock dividend as taxable income in his Federal income tax return for 1939, though he did make a statement that he had received such dividend but considered it nontaxable. The Commissioner in the notice of deficiency included the dividend in petitioner's taxable income at a value of $6,000 (60 shares at $100 per share). [Opinion] Under the recent holding of the Supreme Court in Helvering v. , decided in one opinion April 5, 1943, petitioner is entitled to judgment. Here the petitioner, *343 after the dividend owned exactly the same interest in the net value of the corporation as he did before. The distribution of the dividend in no wise disturbed the relationship previously existing amongst all the stockholders, or that previously existing between the petitioner and the corporation. Before the distribution, when there were 400 Class A shares and 100 Class B shares outstanding, petitioner, as owner of 200 shares of Class A stock was entitled to 200/500ths, or two-fifths, of the net profits or earned surplus when and if declared as dividends. Upon liquidation or dissolution he was entitled to 200/400ths, or one-half, of the capital and paid-in surplus, and to 200/500ths, or two-fifths, of surplus accumulated from earnings but not paid out as dividends. He held 200/400ths, or one-half, of the voting power. After the dividend, when there were 400 Class A shares and 250 Class B shares outstanding petitioner, as owner of 200 shares of Class A and 60 shares of Class B stock, was entitled to 260/650ths, or two-fifths, of the net profits or earned surplus when and if declared as dividends. Upon liquidation or dissolution he was entitled to 200/400ths, or one-half, of the capital *344 or paid-in surplus, and 260/650ths, or two-fifths, of the surplus accumulated from earnings but not paid out as dividends. He held 200/400ths, or one-half of the voting power. The above amply demonstrates that the value of the proportionate interests owned by petitioner before and after the dividend distribution were identical and that no income arose to petitioner on the occasion of the distribution. Decision will be entered for the petitioner.